**INVISIBLE EMPIRE KNIGHTS OF the
KU KLUX KLAN**

v.

**CITY OF WEST HAVEN.**

Civ. No. N–84–259.

United States District Court,
D. Connecticut.

Jan. 14, 1985.

Martha Stone, Civil Liberties Union, Hartford, Conn., for plaintiffs.

Jonathan J. Einhorn, Corp. Counsel, West Haven, Conn., for defendant.

## RULING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### ELLEN B. BURNS, District Judge.

Plaintiffs in this action are the Invisible Empire Knights of the Ku Klux Klan (the "Klan"); Bill Wilkinson, "Imperial Wizard" of the Klan; John Dillon, "Great Titan" of the Klan in Connecticut; James Farrands, "Grand Dragon" of the Klan in Connecticut; and William Dunlap, a law professor who is neither a member of, nor sympathizer with, the Klan but who desires to attend a Klan rally. Defendants are the City of West Haven; members of West Haven's city council (the "Council"); Lawrence Minichino, Mayor of West Haven; Michael D'Errico, West Haven's Chief of Police; Barbara Barry, West Haven's Director of the Department of Parks and Recreation (the "Department"); Arthur Orio, Chairman of West Haven's Parks and Recreation Commission; and the West Haven Parks and Recreation Commission (the "Commission").

On April 17, 1984, the plaintiffs initiated this action, challenging certain sections of the West Haven ordinance regulating parks and recreation areas (the "Ordi-

nance") as violating their First Amendment rights to freedom of expression and of assembly. The plaintiffs also requested a temporary restraining order prohibiting the defendants from enforcing the challenged ordinance with respect to a rally that the plaintiffs had planned to hold on the West Haven Green on April 28, 1984, which order was granted on April 23, 1984. The rally was held on April 28, 1984, but at an alternate site agreed to by the parties. The plaintiffs have now moved for summary judgment seeking a declaration that the Ordinance is unconstitutional and an injunction barring its future enforcement. Plaintiffs also seek compensatory and punitive damages.

### I. *Background*

The Ku Klux Klan is an organization dedicated to the ignoble goal of white supremacy. To achieve this goal, the Klan planned a number of rallies throughout the State of Connecticut during the past several years. On two prior occasions, the plaintiff Dillon requested, and was denied, a permit to assemble on the West Haven Green. In anticipation of another Klan rally to be held on the West Haven Green on April 28, 1984, Dillon wrote to the defendant Barry in December, 1983, to request a permit. Barry responded that the Department was not processing applications for the following year and informed Dillon that he should reapply in 1984. Dillon reapplied by letter dated January 20, 1984. No written response was ever received by the Klan. On March 12, 1984, the Council unanimously passed an amendment to the Ordinance, to be effective April 13, 1984, which required, *inter alia*, that an applicant who anticipates use of city facilities by more than twenty-five persons, or which the Chief of Police reasonably believes will attract more than twenty-five persons, post a bond for the city's costs of police protection and maintenance.[1]

The plaintiffs were unsuccessful in obtaining the bond required by the Ordinance.

---

1. The amendment was originally added as section 5O of the Ordinance. On June 25, 1984, the city council passed an amended version of the Ordinance. The original section 5O of the old ordinance appears as section 5L of the new ordinance. Section 5L provides:

Through their attorney the plaintiffs wrote to Chief of Police D'Errico, declaring their belief that the amendment was unconstitutional and requesting a demonstration permit without having to comply with the amended Ordinance. On April 9 the plaintiffs were informed by the city's attorney during a telephone conversation that their request for a permit would be denied. The plaintiffs thereafter filed the instant action.

The plaintiffs claim that their First Amendment rights to freedom of speech and of association have been impaired by the enforcement of sections 5D and 5L of the Ordinance.[2] They further assert that the possibility of enforcement of the Ordinance serves to "chill" their First Amendment rights. They, therefore, seek declaratory and injunctive relief to prevent future enforcement of the Ordinance and also seek compensatory and punitive damages.

II. *Appropriateness of Summary Judgment*

■ Plaintiffs claim that the challenged provisions of the Ordinance are facially in-

valid. Summary judgment is appropriate where there is "no genuine issue as to any material fact." Federal Rules of Civil Procedure 56(c). An attack on a statute as facially invalid may only succeed when the statute would be invalid regardless of the factual situation to which it is applied. *See International Society for Krishna Consciousness, Inc. v. Rochford*, 425 F.Supp. 734, 738 (N.D.Ill.1977), *aff'd in part, rev'd in part*, 585 F.2d 263 (7th Cir.1978). Therefore, no material issues of fact preclude this court from granting a motion for summary judgment as to the declaratory and injunctive relief sought. However, as to the relief for damages, material issues of fact exist.

■ Plaintiffs claim compensatory damages resulting from the defendants' enforcement of the Ordinance. However, plaintiffs' complaint and supporting affidavits make no showing that plaintiffs were in fact damaged.[3] The rally occurred as planned and plaintiffs had the opportunity to exercise their First Amendment rights. Plaintiffs have also failed to make any

Notwithstanding any ordinance to the contrary, any person, persons, legal entity or organization anticipating use of City property by more than twenty-five (25) people or which the Chief of Police reasonably believes will attract more than twenty-five (25) people shall follow the following procedures:

1. Said applicants shall request a permit from the Department of Parks and Recreation.

2. Said permit shall not be issued unless said applications [sic] present to the Director of Parks and Recreation a bond for the City's costs of police protection and maintenance estimated by the Chief of Police and Parks and Recreation Director as associated with said permit.

3. Any person who is unable to obtain such a bond, may substitute thereby [sic] an individual guarantee of any acceptable person having sufficient financial means to cover such expenses.

4. Any person aggrieved by the decision of the Director of Parks and Recreation with regard to said decision, may appeal to the Parks and Recreation Commission within seven (7) business days of receipt of any written decision.

5. Any person aggrieved from [sic] the decision of the Parks and Recreation Commission, may appeal to the Superior Court for

New Haven County at New Haven in the manner provided by law.

6. For the purpose of this ordinance, any aggrieved person shall include any resident of the City of West Haven.

2. The original complaint alleged that sections 5E, 5N, and 5O unconstitutionally inhibited the plaintiffs' First Amendment rights. Section 5E required written permission of the Board of Parks and Recreation before anyone could "expose for sale any goods or wares, solicit any contributions, or display any advertisement" in West Haven parks. Section 5N required similar written permission before conducting or addressing "any public gathering, meeting, or assembly or [taking] part in any public debate or discussion."

In the revised Ordinance passed on June 25, 1984, section 5E was recodified as section 5D, and section 5O was recodified as section 5L. Section 5N was apparently eliminated. Reference will be made to the sections as they are currently designated in the June 25th Ordinance.

3. Plaintiffs may assert that they were damaged in that they were forced to bring this litigation, thereby incurring attorney's fees. However this element of damages can be remedied by an appropriate motion for attorney's fees pursuant to 42 U.S.C. § 1988.

showing of consequential damages resulting from defendants' actions. Furthermore, the individual defendants, acting as government officials, may well be protected by qualified immunity for their actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[4] Although qualified immunity exists only where the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person should have known," *Id.* at 818, 102 S.Ct. at 2738, an official may plead in defense that he neither knew nor should have known of the relevant legal standard. *Id.* at 819, 102 S.Ct. at 2739. This court requires a more complete record before deciding that the defendant city officials are not entitled to the defense of qualified immunity.

Plaintiffs further claim that this court should award punitive damages against the individual defendants. As plaintiffs acknowledge, punitive damages are available against officials whose conduct demonstrates "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632, 651 (1983). The defendants' state of mind is therefore an important, in fact crucial, element of an award of punitive damages. Such a determination of state of mind can rarely, if ever, be made on a motion for summary judgment. *See Wechsler v. Steinberg*, 733 F.2d 1054, 1058 (2d Cir. 1984).

Therefore, plaintiffs' motion for summary judgment is denied with respect to all claims for damages.

### III. *Declaratory Judgment*

Plaintiffs have now on three occasions sought permission to conduct rallies in the City of West Haven. On each occasion the city denied that permission. The instant action was brought as a result of the last of these denials. If this court were now to dismiss this action because the plaintiffs no longer have a pending application for a permit, the defendants would be able to continue to enforce the challenged ordinances. While plaintiffs could conceivably continue to seek temporary restraining orders to exercise their rights to free public expression of their ideas, the Constitution does not impose such a burden on First Amendment liberties.

In *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the Supreme Court recognized that an overly broad statute which tended to "seriously inhibit the exercise of protected freedoms" could provide a basis for equitable relief. *Id.* at 489, 85 S.Ct. at 1122. Similarly, in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Court unanimously approved issuance of a declaratory judgment to protect the future exercise of the right to free expression.

In the instant case, plaintiffs have demonstrated that their attempts to exercise their First Amendment rights have been previously hindered by the defendants. They have further asserted their intent to hold future rallies in West Haven. However, the prospect of having to engage in continuous litigation, or expose themselves to monetary penalties for violating the Ordinance,[5] certainly imposes a chilling effect on plaintiffs' First Amendment rights.[6] It is, therefore, appropriate to address the constitutionality of the Ordinance in consideration of the granting of a declaratory judgment. *Steffel, supra* at 475, 94 S.Ct. at 1223. *Cf. Dombrowski v. Pfister*, 380 U.S. at 489, 85 S.Ct. at 1122 (injunctive relief appropriate).

---

**4.** The Mayor and council members may also benefit from absolute immunity for actions taken in their legislative capacity. *Aitchison v. Raffiani*, 708 F.2d 96, 98 (3d Cir.1983). *Cf. Tenney v. Bradhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (state legislators absolutely immune).

**5.** Section 50 of the Ordinance imposes a $50 fine for each violation.

**6.** The court notes that the city's reenactment of the Ordinance, including the challenged sections, after the issuance of the temporary restraining order in April, indicates that the city intends to continue to enforce the Ordinance.

## A. CONSTITUTIONALITY OF SECTION 5L

Section 5L, which is set out in note 1, requires that an individual or organization obtain a permit from the Department if use of city property by more than twenty-five persons is anticipated. A permit is also required if the Chief of Police reasonably believes that the planned use will attract more than twenty-five people. In order to obtain such a permit, the Ordinance requires that the applicant post a bond for the city's costs of police protection and maintenance in an amount to be "estimated" by the Chief of Police. If the applicant cannot obtain a bond, he may submit an "individual guarantee of any acceptable person having sufficient financial means to cover such expenses." The Ordinance makes no mention of any criteria for the granting of a permit other than the bond or surety requirement. It does not, by its terms, require that the Department issue a permit once the bond or surety requirement is met.

Plaintiffs make several facial attacks on section 5L. Among the alleged constitutional deficiencies of the Ordinance is its lack of standards for the granting of permits, its failure to give adequate notice of when a permit is required, its shifting of costs of police protection from the city to the speaker, and its failure to contain a waiver provision for indigents.[7]

### Lack of Adequate Standards

The Ordinance provides absolutely no standards by which the Director of Parks and Recreation is to decide whether to issue a permit, even if the applicant has secured the required bond. In *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), the Supreme Court overturned the conviction of a defendant who had violated a permit law by parading without first obtaining a permit. The Court noted that, although the Alabama Supreme Court had provided an extremely narrow interpretation of the statute so as to preserve its constitutionali-

ty, at the time of the defendant's arrest the statute had not been so narrowly construed. The overbreadth of the statute required reversal of the defendant's conviction.

The Ordinance in question contains no guidelines for the Director of Parks and Recreation to follow in granting or denying a permit. The Ordinance requires an applicant to request a permit from the Department. It provides that no permit may be issued unless the required bond or surety is posted. However, once the bond or surety is posted, the Ordinance is silent as to the standards for approving or disapproving the application.

Courts have consistently treated such standardless prior restraints on expression as invalid. *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). In *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 649, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1982), the Court allowed a time, place, and manner restraint which prevented the exercise of unconstrained discretion, noting that "covert forms of discrimination ... may result when arbitrary discretion is vested in some government authority ... because such discretion has the potential for becoming a means of suppressing a particular point of view." *See also Cox v. Louisiana*, 379 U.S. 559, 569, 85 S.Ct. 476, 483, 13 L.Ed.2d 487 (1965).

The lack of clear, reasonable and definite standards is fatal to the challenged Ordinance. *Interstate Circuit v. Dallas*, 390 U.S. 676, 690, 88 S.Ct. 1298, 1306, 20 L.Ed.2d 225 (1968) (vague standards for motion picture classification). *Wolin v. Port of N.Y. Authority*, 392 F.2d 83, 93 (2d Cir.1968) (excessive delegation of discretion makes permit regulation unconstitutional). The defendants argue that the Ordinance should not be declared unconstitutional because it is susceptible to a narrowing construction. However, nothing in the Ordi-

---

7. Plaintiffs also assert that other aspects of section 5L infringe upon their First Amendment rights. However, because of the ultimate deci-

sion in this case the court does not feel compelled to address each of the plaintiffs' contentions.

nance itself suggests such a limited application. *Cf. Eisner v. Stamford Board of Education,* 440 F.2d 803, 808 (1971) (guidelines provided to decision maker permit narrow construction of school board policy). It is not the function of courts to act as legislators "to create from whole cloth a complex and completely novel procedure ... for the sole purpose of rescuing a statute from a charge of unconstitutionality." *United States v. Jackson,* 390 U.S. 570, 580, 88 S.Ct. 1209, 1215, 20 L.Ed.2d 138 (1968). *See also Interstate Circuit, supra* 390 U.S. at 690, 88 S.Ct. at 1306 ("[i]t is not our province to draft legislation.") Because no guidelines are contained in the Ordinance, the only narrowing construction that this court can provide is one that requires the Department to grant a permit to every applicant.[8] Accordingly, section 5L is declared unconstitutional except to the extent that it requires the granting of every application for a permit to use city park and recreation facilities.[9]

### Failure to Give Adequate Notice

■ Plaintiffs also attack that portion of section 5L which requires an applicant to seek a permit when "the Chief of Police reasonably believes [the intended use] will attract more than twenty-five (25) people." Plaintiffs correctly assert that such a requirement fails to give adequate notice to an applicant as to when a permit is required. If the potential applicant does not anticipate use by more than twenty-five persons, he is forced to predict what the Chief of Police will anticipate. Besides having the potential for discouraging expression and imposing a "chilling effect" on First Amendment rights, *Keyishian v. Board of Regents,* 385 U.S. 589, 604, 87 S.Ct. 675, 684, 17 L.Ed.2d 629 (1967), such an Ordinance fails to give adequate notice to one who may eventually be fined for its violation. Although the Chief of Police, through his experience, may know how rea-

sonably to estimate the size of an expected crowd, such knowledge cannot be imputed to individuals who wish to express their views on public property. From the perspective of the person who wishes to exercise his or her First Amendment liberties, the Ordinance is "so vague and indefinite" that it is "repugnant to the guaranty of liberty contained in the Fourteenth Amendment." *Cox v. Louisiana,* 379 U.S. at 552, 85 S.Ct. at 463 (quoting *Stromberg v. California,* 283 U.S. 359, 369, 51 S.Ct. 532, 535, 75 L.Ed. 1117). Therefore, section 5L is unconstitutional to the extent that it makes the requirement of a permit contingent upon the Chief of Police's estimate of crowd participation.

### Bond Requirement

■ The Ordinance requires an applicant to post "a bond for the city's costs of police protection and maintenance," or "substitute ... an individual guarantee of an acceptable person having sufficient financial means to cover such expenses." It is significant that the bond is to cover costs for police protection, not simply costs for potential injury to private or public property. In effect the bond requirement seeks to impose the cost of police protection on the applicant. This result cannot be permitted. *Cf. Buckley v. Valeo,* 424 U.S. 1, 49, 96 S.Ct. 612, 649, 46 L.Ed.2d 659 (1976) ("The First Amendment's protection against governmental abridgement of free expression cannot properly be made to depend on a person's financial ability to engage in public discussion").

■ It is axiomatic that the right to free and uninhibited speech is basic to the fabric of our society. The free exercise of that right is bound, at times, to stir people to anger and provoke high emotions. *Cox v. Louisiana,* 379 U.S. at 552, 85 S.Ct. at 463. But the exercise of the right to free

---

**8.** Because the bond requirement is also unconstitutional, *see infra,* the failure to obtain the bond required by section 5L cannot be used as a basis for denying a permit.

**9.** This very narrow construction of section 5L still provides the city with notice of any planned

use of city facilities by groups anticipating participation by more than twenty-five people so that it can provide necessary police protection. It should be noted that it is the applicant's anticipation of the number of participants that controls the need to apply for a permit. *See infra.*

expression, however unpleasant the expression may be, "will ultimately produce a more capable citizenry and more perfect polity...." *Cohen v. California,* 403 U.S. 15, 24, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971). The Ordinance in question, which imposes a cost on expression, treats the First Amendment as a privilege to be bought rather than a right to be enjoyed. It is society that benefits by the free exchange of ideas, not only the person whose ideas are being shared. In order fully to preserve and protect the people's right to be informed, it is society that should bear the expense, however great, of guaranteeing that every idea, no matter how offensive, has an opportunity to present itself in the marketplace of ideas. *See Cohen v. California,* 403 U.S. at 25, 91 S.Ct. at 1788. *See also Wolin v. Port of N.Y. Authority,* 392 F.2d at 94 (2d Cir.1968) (individuals exercising First Amendment rights "are entitled" to police protection.)

■■■ The city has attempted to justify section 5L by analogizing the granting of a permit to hold a political rally to the granting of a license to hold a carnival on public property. Although the city may reasonably expect a fee when it is acting in a proprietary capacity when "leasing" its property to a commercial exercise, the analogy loses its force when applied to the city acting in a governmental capacity in providing access to public forums. For example, few would dispute a state's right to charge a fee to a commercial user of a state-owned railroad line, or to require such a commercial user to carry adequate liability insurance. However, in *Eastern Conn. Citizens Action Group v. Powers,* 723 F.2d 1050 (1983), the Second Circuit disallowed both a use fee and an insurance require-

ment when the planned use of the railroad line was an expression of the plaintiffs' views on state transportation policy. Although the *Powers* court did not find it necessary to rule on the facial invalidity of the insurance requirement, it stated that "when the proposed use of state property involves the exercise of constitutional rights, fee and insurance conditions must be carefully scrutinized." *Id.* at 1057.[10]

Besides imposing a price on First Amendment rights, section 5L also varies that price according to the estimate of the Chief of Police as to crowd size. The effect is to make the cost of a permit greater for groups that will attract a large audience. This is true whether the audience is one welcomed by the speaker, or one which is hostile to the speaker's point of view. The result is that, by threatening loud and numerous opposition, an opposing group can make the amount of the bond (and the actual cost of police protection born by the speaker) prohibitive, effectively nullifying the right to free expression of an unpopular idea.

The ability of an opposing group to exercise such a "hecklers' veto" is contrary to the very nature of the First Amendment. As Judge Edwards ably stated in *NAACP Legal Defense and Education Fund v. Devine,* 727 F.2d 1247, 1261 (D.C.Cir.1984), "[t]o allow the intolerance (and threats) of a vocal minority (or even the majority) to determine who shall and shall not speak 'would lead to standardization of ideas,' *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949), and 'would fictionaliz[e] the *rationale* of the First Amendment.'" (Citations Omitted. Emphasis in original). It is no answer to

---

**10.** It is important to distinguish between a permit fee which covers the reasonable costs of administering the permit system, and the charge for police protection involved here. Although a permit fee may be allowed for the limited purpose of covering administrative costs, such administrative costs are normally minor and unlikely to inhibit anyone from exercising his or her First Amendment rights. *See U.S. Labor Party v. Codd,* 527 F.2d 118 (1975). The imposition of police costs, however, will frequently create a substantial financial burden. Such a

large burden on exercise of a constitutional right must be subject to strict scrutiny. *Bullock v. Carter,* 405 U.S. 134, 146, 92 S.Ct. 849, 857, 31 L.Ed.2d 92 (1972). The city's interest in recouping the costs of its already existing duty of protecting its citizens in the exercise of their constitutional rights cannot justify the massive burden § 5L imposes upon those rights. *Cf. Bullock, supra* at 147–49, 92 S.Ct. at 857–59 (burdens of state financing primaries insufficient to justify imposition of large filing fees).

state that the message of these plaintiffs is so offensive that justice is served by permitting it to be drowned out by a more responsible majority. However distasteful this judge finds plaintiffs' message to be, it is the duty of this court to reaffirm that speech may not be barred simply because some, or all, in a community find the ideas expressed to be offensive. *Street v. New York*, 394 U.S. 576, 592, 89 S.Ct. 1354, 1365, 22 L.Ed.2d 572 (1969).

It is only necessary to look back a score of years in our history to find a situation in which speakers who advocated racial equality were denied their freedom of expression because of the angry response of a segment of the community to their message. In *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) the Supreme Court was confronted with a case in which the appellant had been convicted of breach of the peace after leading a protest against the arrest of students who had picketted stores that maintained segregated lunch counters. The state argued that the arrest had been proper because a group that had formed in opposition was growing "agitated" and "tense". The Court reversed the conviction stating that the " 'compelling answer . . . is that constitutional rights may not be denied simply because of hostility to their assertion or exercise.' " *Id.* at 536, 85 S.Ct. at 453 (quoting *Watson v. Memphis*, 373 U.S. 526, 535, 83 S.Ct. 1314, 1319, 10 L.Ed.2d 529). The challenged section of the Ordinance in question similarly allows a hostile group effectively to deny a speaker's constitutional rights by making the exercise of those rights prohibitively expensive.

Accordingly section 5L is declared unconstitutional insofar as it requires a permit applicant to post a bond for the costs of police protection and maintenance.

*Indigency*

 Even if the city were allowed to impose the costs of police protection on permit applicants, section 5L makes no provision for applicants who, by reason of indigency, cannot provide the necessary financial security. It has been well established in recent years that the exercise of fundamental constitutional rights cannot be conditioned upon an individual's wealth. *See e.g., Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (state cannot revoke probation for inability to pay fine or make restitution); *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974) (otherwise valid candidate's filing fee cannot be required of an indigent); *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) (jail term may not be imposed in lieu of fine because of inability to pay fine). To the extent that section 5L requires payment of a bond for costs to those who can demonstrate their inability to obtain such a bond, it is declared unconstitutional.

## B. CONSTITUTIONALITY OF SECTION 5D

 The plaintiffs have also challenged section 5D of the Ordinance because it requires a permit without providing the decision maker with adequate standards for consideration of a permit application. Section 5D governs permits issued to persons wishing to sell "goods or wares, solicit any contributions, or display any advertisement. . . ." Although section 5D appears to be primarily aimed at "commercial" behavior, its regulation of solicitation of contributions and display of advertisements impacts upon interests protected by the First Amendment.

This case does not present the court with the question of whether the Ordinance improperly affects "commercial speech" by granting standardless discretion to the Department of Parks and Recreation. It does, however, require this court to decide whether the permit requirement is unconstitutional when applied to contribution solicitations and advertisements of a noncommercial nature. *See First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707, *reh. den.* 438 U.S. 907, 98 S.Ct. 3126, 57 L.Ed.2d 1150 (1978) (discussing limits on commercial and noncommercial speech).

Section 5D provides no greater standards for the decision maker than does section

5L. Therefore, for the reasons discussed above, section 5D is declared unconstitutional insofar as it applies to noncommercial solicitations and advertisements except to the extent that it requires the granting of every application for a permit to use city park and recreation facilities for such noncommercial uses.

*Injunctive Relief*

 In order to be entitled to injunctive relief, a plaintiff must establish irreparable injury and the lack of an adequate remedy at law. *Beacon Theatre v. Westover*, 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959). The paramount importance of First Amendment liberties to our system of government makes any unlawful infringement of those liberties an irreparable injury, not only to the speaker, but to society itself. *See Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976) (plurality opinion); *414 Theater Corp. v. Murphy*, 499 F.2d 1155, 1160 (2d Cir.1974). In this case plaintiffs have already been denied permits for rallies on three occasions. The city has reenacted the challenged Ordinance since the temporary restraining order was issued in this case, indicating its intent to continue enforcement of the Ordinance. The continuing burden on speech imposed by the Ordinance creates a "chilling effect" by requiring a potential speaker repeatedly to seek an order restraining enforcement of the Ordinance, or to violate the Ordinance's permit requirement and risk possible arrest and fine. The resulting impairment of constitutionally guaranteed liberty constitutes the necessary irreparable injury. Furthermore, the balancing of the plaintiffs' interest in free speech against the city's interest in being able to enforce an unconstitutional ordinance clearly establishes that the equities tilt decidedly in favor of the plaintiffs.

## CONCLUSION

When the message communicated by a speaker is as offensive as that of these plaintiffs, there is a tendency to respond instinctively to bar further utterance of the offending speech. However, the principles embodied in our Bill of Rights requires that the majority tolerate the expression of unpopular views. This court, as do all courts, has a duty to protect the expression of ideas, no matter how reprehensible, from the instinctive responses of a well-meaning citizenry.

Accordingly, sections 5D and 5L are declared unconstitutional insofar as they apply to noncommercial uses of city park and recreation property except that the city may require a potential user of such property to obtain a permit. However, the Department of Parks and Recreation may not deny any permit applications by noncommercial users. The city may not require the posting of any bond or surety for costs of police protection and maintenance as a condition for the granting of such a permit. The city is enjoined from enforcing the "Ordinance Regulating the Use of Parking Areas, Bathing Beaches, Parks and Recreation Areas Under the Jurisdiction of the Board of Parks and Recreation of the City of West Haven," enacted by the city council on June 25, 1984, in any way inconsistent with this decision.

SO ORDERED.