**William NICHOLS, and William Keane, Plaintiffs,**

v.

**PLANNING AND ZONING COMMISSION OF the TOWN OF STRATFORD, George Hermann in his official capacity as Chairman of the Planning and Zoning Commission, Gary Lorentson, in his official capacity as Zoning Enforcement Officer of the Planning and Zoning Commission, Zoning Board of Appeals for the Town of Stratford, Albert Beraducci, in his official capacity as Chairman of the Zoning Board of Appeals for the Town of Stratford, Defendants.**

**Civ. No. B–86–153 (TFGD).**

United States District Court,
D. Connecticut.

June 30, 1987.

Shelley White, Martha Stone, Conn. Civil Liberties Union, Hartford, Conn., for plaintiffs.

Anthony M. Guerrera, Stratford, Conn., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DALY, Chief Judge.

Plaintiffs William Nichols and William Keane filed this action in March 1986 seeking compensatory, declaratory, and injunctive relief from defendants' enforcement of Zoning Regulations of the Town of Stratford which, the plaintiffs claim, violate the first, ninth, and fourteenth amendments to the United States Constitution both facially and as applied. Plaintiffs have moved the Court for summary judgment pursuant to Fed.R.Civ.P. 56.[1]

## DISCUSSION

Summary judgment shall be granted if the pleadings, depositions, and interrogatories, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Only material facts that might affect the outcome of the suit under the governing substantive law are considered material and properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of factual issues not material to the claims before the court will not be counted. *Id.*, 106 S.Ct. at 2510; *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985). "Nor may a party rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The Court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Knight*, 804 F.2d at 11. The moving party bears the burden of demonstrating the absence of disputed material facts and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may easily be discharged, for example, by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 2554.

To defeat the motion, a factual dispute also must present a genuine issue for trial, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby*, 106 S.Ct. at 2510. If inferences can be drawn that would support a reasonable jury's verdict for the nonmoving party, then summary judgment is precluded. *Id.* The burden rests with the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. Fed.R. Civ.P. 56(e); *Matsushita*, 106 S.Ct. at 1356.

Although these threshold burdens traditionally have caused some courts to look upon summary judgment with disfavor, that view has "long since been jettisoned" in this Circuit. *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1319 (2d Cir.1975). Instead, summary judgment is now viewed as an effective and correct method of avoiding protracted trials. *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Where a law is challenged as facially inconsistent with the first amendment because it impinges upon constitutionally protected activities, summary judgment may be appropriate because it is a legal, not a factual question. *Holy Spirit Assn. for Unif. of World Christ v. Hodge*, 582 F.Supp. 592, 595 (N.D. Tex.1984); *See also Invisible Empire Knights of KKK v. City of West Haven*, 600 F.Supp. 1427, 1430 (D.Conn.1985) (If a challenge to the facial validity of a statute is to succeed, it must do so regardless of the factual situation to which it is applied.) On the issue of vagueness of the Zoning Regulations *sub judice*, the Court finds no genuine issue of material fact. The Court

---

1. In the complaint, which sets forth six causes of action, the plaintiffs claim violations of the free exercise and establishment clauses of the first amendment, the right to privacy, equal protection, and the doctrines of vagueness and overbreadth. The Court limits its ruling to the doctrine of vagueness and does not reach the other issues raised by the plaintiffs.

does not pass here on the issue of damages.

## FACTS

The plaintiff, William Nichols, has for the relevant period of time, been a resident of the Town of Stratford. Nichols, as well as the plaintiff William Keane, are followers of "The Way, International" (The Way), a biblical research, teaching and fellowship ministry. (Affidavits of Nichols and Keane). An essential part of this sect is the integration of one's religious life with one's home life through prayerful contemplation and discussion with other followers of The Way at regular meetings. *Id.* Persons who attend these meetings engage in prayer, song, discussion, and study of the bible. *Id.* In furtherance of this way of life, Nichols conducted in his home three meetings each week with other followers of The Way. Each meeting was attended, upon Nichols' invitation, by up to ten persons, all followers of The Way. *Id.* Keane was in regular attendance. *Id.*

The practice of holding regular meetings in Nichols' Stratford home began in July, 1983. That practice continued without interruption until September 11, 1985, when, in response to a neighbor's complaint that religious services were being conducted in Nichols' home, the Town Zoning Enforcement Officer, defendant Gary Lorentson, inspected the property and questioned Nichols about the fellowship meetings. On September 13, 1985, Nichols received a letter from Lorentson informing him that "any property used for religious purposes must be approved by the Planning and Zoning Commission as a Special Case" (Plaintiff's Complaint, Exhibit B). The letter went on to inform Nichols that unless he corrected the existing violations by either ceasing the religious meetings, or by submitting a Special Case Application to the Planning and Zoning Commission, he would be in violation of sections 4.1.6. and 4.1.6.3. of the Zoning Regulations and an "infractions complaint" would be issued to him (Exhibit B). The relevant regulations, applicable to the one-family residential district in which Nichols lives, provide as follows:

> 4.1.6. The Commission may approve the following individual uses as *special cases* and subject to conditions as the commission may impose, giving consideration to the effect of the proposed use on present and future dwellings in the vicinity, to the proposed site planning and landscaping, to the conditions affecting traffic safety, to the provisions for off-street parking and to other standards provided in these regulations.
>
> 4.1.6.3. A church, parish hall, *or other religious use*, but excluding a cemetary.

Town of Stratford Zoning Regulations §§ 4.1.6. & 4.1.6.3 (emphasis added). Section 20.2 of the Stratford Town Code sets forth the factors to be considered by the Town Planning and Zoning Commission once it has before it a special case application.[2]

2. Section 20.2 provides as follows:

20.2. Special Cases.

Those uses which are named as special cases by these regulations shall be considered to be permitted uses in the district under which they are named, subject to approval by the commission as to each specific use. Each of these uses is declared to be of such peculiar and unusual nature on its effect on an area that in order to have it comply with the purposes of these zoning regulations it is necessary to consider it as a special case. The commission may, after public notice and hearing in the same manner required by law for zoning amendments and by the affirmative vote of four or more members present at the hearing, approve the use after making special application of these regulations in harmony with their general intent by stipulating

such restrictions as appear to the commission to be reasonable and the minimum necessary to protect property values in the district as a whole and the public health, safety and welfare.

Before approving any special case the commission shall consider (a) The size and intensity of such use and its effect on the comprehensive plan of development for the town. (b) The capacity of adjacent and feeder streets to handle peak traffic loads and hazards created by the use. (c) The emission of noise, light, smoke, odor, gas, dust, or vibration in noxious or offensive quantities. (d) The overall effect on tax valuation of neighborhood properties due to unusual topography of the location, the nature, location and height of buildings, walls, stacks, fences, grades and landscaping on the site. (e) The extent, nature and arrangement of parking facilities, entrances and exits. (f) Fire and po-

On or about October 24, 1985, Nichols received another letter from Lorentson, this one informing him that unless he ceased all religious meetings immediately upon receipt of the letter, he would be issued an infractions complaint and be liable thereon for $100–$250 for each violation of the regulations (Exhibit C). Similar letters, dated November 5, and December 16, 1985, were received by Nichols (Exhibits D & E). The November 5 letter highlighted the phrase "or other religious use," as it appears in § 4.1.6.3., apparently intending to inform Nichols of the particular provision he allegedly was violating. Each letter advised Nichols that to comply with the regulations, he had either to appeal the decision of the Zoning Enforcement Officer or to seek a waiver. The letter of December 16 advised Nichols that if he failed to comply by appeal or waiver by December 31, he would be found in willful violation of the regulations, punishable by criminal sanctions. *See* Conn.Gen.Stat. § 8–12 (Supp.1987). At some point during the course of this correspondence Nichols ceased holding meetings of The Way in his home.[3]

In late December Nichols filed with the Zoning Board of Appeals (ZBA) an appeal of the cease and desist order. In February, 1986, the appeal was heard by the defendants Beraducci and the ZBA. While the appeal was pending, from February 4 until March 4, 1986, the order was temporarily lifted. The appeal was not successful, and in March, Nichols was notified that the cease and desist order had been upheld, and he was ordered to stop conducting the subject meetings in his home.

On April 11, 1986, upon the consent of the parties this Court issued a preliminary injunction. The injunction, in effect, temporarily lifted the order that prevented Nichols from conducting the meetings.[4] The injunction has remained in effect while this matter was pending.

In their statement in opposition to the motion for summary judgment, defendants list several disputed facts which, they assert, are material and thus preclude summary judgment. The disputed facts include how many persons attended the meetings (¶¶ 1–2), how many of those who attended the meetings parked their cars on adjoining streets (¶ 3), how many vehicles were brought to the area for the meetings (¶¶ 4–5), and whether any meetings were conducted during the period September 15 through February 7 (¶ 7). By disputing these facts, it appears that the defendants are attempting to imply that the cease and desist order was issued because Nichols was believed to be operating a church as that term is understood in common parlance. That is simply belied by the evidence. Lorentson's letter of November 5, 1985, for example, indicates that Nichols was being charged with using his premises not as a "church," but for "other religious use[s]." By disputing these facts, defendants' argument may also be construed as addressing the lawfulness of the meetings

---

lice hazards involved. (g) All other standards prescribed by these regulations for the use.

**3.** In ¶ 6 of their statement in opposition to the motion for summary judgement (*See* Local Rule of Civil Procedure 9(c)), the defendants state that it is not established whether the plaintiffs were ever prevented from holding fellowship meetings in Nichols' home as a result of the actions of the defendants. In their Answer to the Complaint, however, the defendants admit that Nichols was forced to stop conducting the fellowship meetings in his home. Defendants' Answer ¶ 5. This is true notwithstanding the fact that in plaintiff's own submissions there lies an inconsistency as to when the services were in fact terminated. This alleged inconsistency speaks not to the validity of the regulations at issue but only to the issue of damages. The inconsistency, if any, will not, as the defendants

request, be generalized to the rest of plaintiffs' submissions.

**4.** The injunction temporarily enjoins the defendants from stopping the meetings in Nichols' home of "a small select group of like-minded individuals for the purposes of prayer, worship and religious discussion," and from enforcing §§ 4.1.6 & 4.1.6.3 against the plaintiffs for holding the meetings. In return, the plaintiffs are to make efforts to ensure that people not living in Nichols' home will not bring motor vehicles there for the purpose of repair, and that Nichols will make an effort to do any repairs on his own vehicles inside his garage, and further, that all persons attending his meetings will park either in his driveway or in legally designated parking areas on the street without blocking the driveways of other residents on the street.

under § 4.1.6. of the Zoning Regulations, and § 20.2 of the Town Code. Each of those provisions, however, address the review of special case applications, not the character of or the type of conduct addressed by § 4.1.6.3.

■ The disputed facts do not impact upon the character of the Zoning Regulations in dispute nor upon the fact that the enforcement of the regulations ultimately prevented Nichols from holding his fellowship meetings. The defendants's statement in opposition neither presents facts that are relevant to the applicable substantive law, nor is it sufficient to suggest that the plaintiffs have not met their burden under Rule 56. *See e.g., Anderson v. Liberty Lobby,* 106 S.Ct. 2505 (1986). *See also* discussion of applicable law *infra.*

## VAGUENESS

The plaintiffs claim that the phrase "other religious use" in § 4.1.6.3. of the Zoning Regulations of the Town of Stratford is impermissibly vague both facially and as applied to them. A regulation is impermissibly vague if, by its terms, it fails to provide adequate notice of its scope, and sufficient guidance for its application. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) (a statute is void if persons of common intelligence must guess at its meaning and differ as to its application); *See e.g., Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *Hoffman Estates v. Flipside, Hoffman Estates Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1952).

There are two ways that vague laws are repugnant to the Constitution. First, a vague law may not provide a clear articulation of prohibited activity so that citizens of ordinary intelligence may regulate their primary activity accordingly. Vague laws may trap the innocent by not providing fair warning, or they may lead citizens to steer far wider of the unlawful zone than if the boundaries were clearly delineated. *Grayned v. City of Rockford,* 408 U.S. 104,

108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1971). The second way that a vague law is repugnant to the Constitution is the manner in which it is enforced or administered. If arbitrary and discriminatory enforcement is to be prevented, the law must include in its terms explicit standards to guide those whose responsibility it is to enforce the law. *Grayned,* 408 U.S. at 108–09, 92 S.Ct. at 2298–99.

■ Where a vague statute abuts sensitive areas of basic first amendment freedoms, it operates to inhibit the exercise of those freedoms. *Id.* at 108, 92 S.Ct. at 2298; *Hoffman Estates,* 455 U.S. at 499, 102 S.Ct. at 1193 (The most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights). In such a case, the vagueness "doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). Accordingly the Court must demand of that regulation the utmost clarity of the conduct it is intended to prohibit. *State v. Cameron,* 100 N.J. 586, 498 A.2d 1217, 1221 (1985) (finding zoning regulation vague as applied), *citing, Hoffman Estates,* 455 U.S. at 498–99, 102 S.Ct. at 1193–94. The phrase "other religious use" as it appears in § 4.1.6.3. and as applied to the plaintiffs here does not survive that scrutiny.

First, "other religious use" does not provide for the citizen of ordinary intelligence a clear standard by which to regulate his activities. For example, § 4.1.6.3. does not assure with certainty whether one may hold Passover Seder in his home, whether he may light a Hannakuh Menorah, meet with a group of youths in one's home to prepare them for the reception of the sacrements of confirmation or communion, or gather with friends to discuss the Bible. Similarly, it lacks the certainty necessary to forewarn the plaintiffs here that a small group of like-minded individuals, followers of The Way, may not meet in Nichols' home to interact as their religion may dictate. One who wishes to comply with the

regulation may be inhibited from engaging in a much larger sphere of conduct than the legislative body intended to proscribe.

Second, neither § 4.1.6.3., nor §§ 4.1.6. or 20–2. provide a sufficiently articulate standard by which the Zoning Board may itself define "other religious use," or when a Special Case application needs to be made for such use. Instead, the Board is free to require arbitrarily a Special Case permit for the conduct of any activity it may deem is proscribed by the Regulations. Without articulable standards, the Regulations "delegate[ ] basic policy matters to a [Zoning Enforcement Officer] on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications". *Grayned,* 408 U.S. at 109, 92 S.Ct. at 2299.

■ This lack of clarity and the absence of standards that may preclude arbitrary enforcement present yet another problem. The regulation under review, is one "which gives an administrative official discretionary power to control in advance the right of citizens to" exercise constitutionally protected activities—specifically the free exercise of religion and the right to freely associate with others—and as such it is clearly invalid as a prior restraint on the exercise of such activities. *Kunz v. New York,* 340 U.S. 290, 293, 71 S.Ct. 312, 314, 95 L.Ed. 280 (1951) (Police Commissioner's authority to deny "for good reasons" permit for religious meeting held invalid prior restraint.); *see, e.g., Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51 & n. 2, 89 S.Ct. 935, 938 n. 2, 22 L.Ed.2d 162 (1969) (denial of parade permit because it would violate the City Commissioners' ideas of " 'public welfare, peace, safety, health, decency, good order, morals or convenience' " held invalid prior restraint); *Cantwell v. Connecticut,* 310 U.S. 296, 307, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1940) (State's authority to determine what a religious cause is for purpose of statute that requires a permit to solicit for religious causes held invalid prior restraint). To allow the Zoning Board or the Zoning Enforcement Officer indiscriminantly to continue to declare one's use of his home as an "other religious use" and thereby prohibit that use under §§ 4.1.6.3. & 4.1.6. would plant the seed for "covert forms of discrimination," and provide the means by which the Town of Stratford could "suppress[ ] a particular point of view." *Hefron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 649, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981); *See Invisible Empire Knights of the KKK,* 600 F.Supp. at 1432. This seed this Court will not sow.

■ The arbitrary quality of the regulations and the responsibility of the enforcement agencies thereunder is in no way diminished by § 20.2. of the Stratford Town Code. That section, entitled "Special Cases," sets forth guidelines by which the Zoning Board may evaluate Special Case applications. *See supra,* note 2. The defendants argue that the Regulations are not impermissibly vague because §§ 4.1.6. & 4.1.6.3. must be read in conjunction with § 20.2., yet that section is not invoked until one determines that a Special Case permit is in fact required by the Regulations. The guidelines contained in § 20.2. are intended to be included in the Commission's consideration of the effect the proposed use may have upon a particular geographical area. These guidelines apply not to whether a particular use is in the first instance one for which a special case permit is required, but only whether the granting of a special case waiver is appropriate under the guidelines. Consequently, even were the standards of § 20.2. sufficiently articulate, they still fail to either lend meaning to "other religious use," or provide standards by which § 4.1.6.3. may be enforced.

■ A statute challenged for its facial validity may be voided if it is "impermissibly vague in all its application." *Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. at 1191. To be facially invalid, therefore, the Court must find that the phrase "other religious use" in § 4.1.6.3. proscribes no conduct with sufficient certainty. *Cameron,* 498 A.2d at 1217. Since the phrase does not provide an ascertainable standard by which one may determine that particular conduct is included or excluded by the regulation, it is vague in all its applications, and thus

invalid on its face. *See, e.g., Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971) (a statute that proscribes conduct that is "annoying" to people, lacks a specific standard of conduct and is facially vague).

A statute may be found to be vague as applied when "the law does not with sufficient clarity prohibit the conduct against which it [is] sought to be enforced." *Id.* at 1220, *citing, Palmer v. City of Euclid,* 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971) (statute prescribing punishment of "suspicious persons" held vague only as applied to a particular case). Section 4.1.6.3. falls within this category as well.

Accordingly, because the Court finds § 4.1.6.3. unconstitutionally vague both facially and as applied, the motion for summary judgment is GRANTED IN PART. The Court shall, upon proper application, conduct a hearing on damages, provided such application is filed and served in accordance with the Local Rules, no later than Friday, July 17, 1987.

It is SO ORDERED.