Mehran SEDAGHATPOUR, Plaintiff,

v.

DOUBLECLICK INC., Defendant.

No. 99 Civ. 3617(JES).

United States District Court,
S.D. New York.

July 29, 2002.

Richard Stelnik and Samuel Friedman, New York City, for Plaintiff.

Orrick, Herrington & Sutcliffe, LLP (Michael B. Carlinsky, Robert S. Whitman, of counsel), New York City, for Defendant.

## MEMORANDUM ORDER AND OPINION

SPRIZZO, District Judge.

Plaintiff-former employee Mehran Sedaghatpour ("plaintiff") brings this action to recover damages arising out of alleged activities by defendant-employer Double-Click, Inc. ("DoubleClick," "the company," or "defendant"). Specifically, plaintiff maintains that defendant committed, *inter alia*, federal securities fraud, common law fraud, and breach of contract in connection with stock options offered him as part of his compensation package. Defendant moved for summary judgment on the grounds that plaintiff's claims are time-barred, and, in any case, without merit. Plaintiff filed a cross-motion for summary judgment limited to his breach of contract claim. For the reasons set forth below, defendant's motion for summary judgment is granted, in part, and plaintiff's cross-motion for summary judgment is denied. Plaintiff's remaining state law claims are dismissed without prejudice.

## BACKGROUND

DoubleClick, an internet advertising company, is a Delaware corporation with its principal place of business in New York. *See* Compl. ¶ 6. Plaintiff is a computer software engineer and a resident of New York. *See* Compl. ¶¶ 4, 5. The Court has subject matter jurisdiction over this action pursuant to § 27 of the Securities Exchange Act of 1934 ("the '34 Act"), 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

Prior to commencing work with Double-Click, plaintiff was employed with Bloomberg, L.P.C. *See* Second Am. Compl. ("Compl.") dated Jan. 5, 2000 at ¶¶ 4, 6–7,

11. Plaintiff received stock incentives as a part of his employment package with Bloomberg, as he had from prior employers. *See* Dep. of Plaintiff dated Oct. 27, 2000 ("Pl.'s Dep.") at 57, 109. In mid–1997, plaintiff received an offer from DoubleClick for a salary higher than that he had been receiving previously. *See* Pl.'s Dep. at 160–61. In the meetings leading up to his offer, plaintiff met with then-Chief Financial Officer ("CFO"), Kevin Ryan, Executive Vice President of Engineering, John Heider, and Chief Technical Officer, Dwight Merriman. According to plaintiff, these meetings were focused on wooing him through talk of the company's financial strength, potential success, and plans for a future initial public offering ("IPO") of its stock. Although these meetings also included discussions of the company's stock option program, DoubleClick never mentioned a particular number of shares, nor was there any discussion of the potential consequences of termination. *See* Pl.'s Dep. at 6–7, 65, 73. Despite the lack of such conversation, plaintiff claims that he was left with the impression that any stock options granted to him would be "indefeasible." *See* Pl.'s Dep. at 66–72.[1]

On July 2, 1997, plaintiff received a letter from DoubleClick (the "Offer Letter"), memorializing a promise of employment with the company pursuant to the terms set forth therein. Under the heading "Stock Options," the Offer Letter stated, in part, that: *"In accordance with the DoubleClick Stock Option Plan,* you will receive 12,000 options of stock which vest 3,000 options per year, based upon the date of option grant. The date of option grant is the last day of the month of hire." Pl.'s Not. of Mot. for Summ. J., Exh. 1, copy of Letter from DoubleClick dated July 2, 1997 (emphasis added). Plaintiff commenced work with DoubleClick on July 15, 1997.

Shortly after beginning work with DoubleClick, plaintiff says he requested a copy of the Stock Option Plan ("the Plan") referenced in the Offer Letter from Ms. Debbie Cippoletti, the company's Human Resources Director. *See* Pl.'s Dep. at 87. According to plaintiff, Ms. Cippoletti told him that a copy of the Plan was "not available." *See id.* Aside from allegedly making an additional request to one of Ms. Cippoletti's colleagues, who responded similarly, plaintiff took no further steps to obtain a copy of the Plan. *See id.* at 88–91. Indeed, plaintiff did not contact any of his direct supervisors or any of the corporate officers with whom he had interviewed previously. *See id.* at 89.[2]

DoubleClick filed its Statement of Intention of an IPO with the Securities and Exchange Commission ("SEC") on December 16, 1997. *See* Compl. ¶ 23. On December 17, 1997, plaintiff received and signed two (2) documents from DoubleClick relating to plaintiff's option grant (collectively "Option Documents"). The first, styled "Notice of Grant of Stock Options" ("Notice of Grant"), restated the grant of 12,000 options and described the precise schedule for those options:

> *Exercise Schedule:* The Option shall become exercisable with respect to: (i) twenty five percent (25%) of the Option Shares upon Optionee's completion of

---

1. This is notwithstanding plaintiff's admission that the word "indefeasible" was never in fact used, *see id.* at 73, and CFO Ryan's insistence that he explained the concept of vesting as it relates to any stock options issued under the terms of the company's program as a matter of course. *See* Dep. of Kevin Ryan dated Jan. 24, 2001 ("Ryan Dep.") at 124–27.

2. In response to deposition questioning about why he did not further pursue the issue, plaintiff responded simply that he is "not a pushy kind of person" and was "so busy with work." Pl.'s Dep. at 88–89.

one (1) year of Service measured from the Vesting Commencement Date; (ii) twenty five percent (25%) of the Option Shares upon the Optionee's completion of two (2) years of Service measured from the Vesting Commencement Date; (iii) twenty five percent (25%) of the Option Shares upon the Optionee's completion of three (3) years of Service measures from the Vesting Commencement Date; (iv) twenty five percent (25%) of the Option Shares upon the Optionee's completion of four (4) years of Service measured from the Vesting Commencement Date. In no event shall the Option become exercisable for any additional Option Shares after Optionee's cessation of Service.

Pl.'s Not. of Mot. for Summ. J., Exh. 3, Copy of Notice of Grant of Stock Option from DoubleClick dated Dec. 17, 1997. The Notice of Grant also emphasized that plaintiff's options were granted subject to the terms of DoubleClick's 1997 Stock Incentive Plan ("the 1997 Plan"),[3] stating that:

Optionee understands and agrees that the Option is granted *subject to and in accordance with the terms of the DoubleClick, Inc.1997 Stock Incentive Plan* (the "Plan"). Optionee further agrees to be bound by the terms of the Plan and the terms of the Option as set forth in the Stock Option Agreement and any Amendment to such Stock Option agreement attached hereto as Exhibit A. A copy of the plan is available upon request made to the Corporate Secretary at the Corporation's principal offices.

*Id.* (emphasis added).[4] The second document, styled DoubleClick's "Notice of Grant of Stock Options and Option Agreement" ("Option Agreement"), similarly emphasized the import of plaintiff's signature by stating: "By your signature and the company's signature below, you and the Company agree that these options are granted under and governed by the terms and conditions of the Company's Stock Option Plan as amended and the Option Agreement, all of which are attached and made a part of this document." Pl.'s Not. of Mot. for Summ. J., Exh. 4, Copy of Stock Option Agreement from Double-Click. The Option Agreement also stated, in part:

5. *Cessation of Service.* The option term specified in Paragraph 2 shall terminate ... prior to the Expiration Date should any of the following provisions become applicable:

(i) Should Optionee cease to remain in Service for any reason (other than death, Permanent Disability or Misconduct) while this option is outstanding, then the period for exercising this option shall be limited to a three (3)-month period measured from the date of such cessation of Service, but in no event shall this option be exercisable at any time after the Expiration Date.

.    .    .    .    .

---

**3.** The effective date of the 1997 Plan was November 7, 1997. *See* Compl., Exh. 5. However, due, in part, to the fact that the number of shares allocated to the 1996 Plan were close to being exhausted, all options granted to employees from July 1997 onward were administered under the 1997 Plan. *See* Dep. of Stephen Collins dated December 6, 2000 ("Collins Dep.") at 58–64. According to DoubleClick, plaintiff's options were therefore administered under the 1997 Plan. *See* Mem.

of Law in Supp. of Def.'s Mot. for Summ. J. at 4n.2.

**4.** The Notice of Grant also included a chart restating the vesting schedule and indicating the date upon which each of the 3,000 shares vested and expired. *See id.* Additionally, the Notice of Grant emphasized that plaintiff had no right of continued service for any specific period, *i.e.*, that plaintiff was an at-will employee. *See id.*

(iv) During the limited period of post-Service exercisability, *this option may not be exercised in the aggregate for more than the number of Option Shares for which the option is exercisable at the time of Optionee's cessation of Service*.... However, this option shall, immediately upon Optionee's cessation of Service for any reason, terminate and cease to be outstanding *with respect to any and all Option Shares for which this option is not otherwise at that time exercisable.*[5]

*Id.* (emphasis added).

On May 18, 1998, plaintiff was notified orally that his employment with Double-Click was to be terminated. *See* Compl. ¶ 37. Plaintiff's termination was made official per a letter from DoubleClick to plaintiff dated June 1, 1998. *See id.* at ¶ 39. Thereafter, on June 17, 1998, plaintiff submitted to DoubleClick a stock option exercise form and check in payment of the strike price, attempting to exercise all 12,000 of his options. *See* Compl. ¶ 39, Exh. 10. The company responded by letter on June 26, 1998, returning the option exercise form and check and stating that plaintiff's attempt was an "improper exercise" and would "not [be] accepted." *Id.* at 40. Plaintiff was also advised to "review [his] signed option agreement carefully to better understand the terms and conditions of [his] stock option grant." *Id.*

Plaintiff filed the instant action on May 17, 1999 and a Second Amended Complaint on January 20, 2000. After voluntarily withdrawing certain of his claims contained in the Second Amended Complaint, plaintiff currently alleges securities fraud, common law fraud, breach of contract, unjust enrichment, and promissory estoppel. *See* Stipulation and Order dated May 10, 2001, amending the Second Amended Complaint by eliminating the First, Second and Fifth claims for relief. DoubleClick filed a Motion for Summary Judgment on May 23, 2001; plaintiff filed a Cross-motion for Summary Judgment limited to his breach of contract claim on July 20, 2001.

## DISCUSSION

A court may grant summary judgment only if it determines that there are no genuine issues of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *See* Fed. R. Civ. Pr. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact; the opposing party bears the burden of setting forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

5. The above-described 1997 Plan contained a substantively identical provision under Section I. C, "Effect of Termination of Service":

> (iv) During the applicable post-Service exercise period, the option may not be exercised in the aggregate for more than the number of vested shares for which the option is exercisable on the date of the Op-

tionee's cessation of Service.... However, the option shall, immediately upon the Optionee's cessation of Service, terminate and cease to be outstanding to the extent the option is not otherwise at the time exercisable for vested shares.

Pl.'s Not. of Mot. for Summ. J., Exh. 5, Copy of DoubleClick Stock Incentive Plan.

*A. Section 10(b)/Rule 10b–5 Claim*

■ Plaintiff alleges that DoubleClick perpetrated securities fraud in violation of Section 10(b) of the '34 Act and Rule 10b–5 promulgated thereunder. *See* Compl. ¶¶ 60–64. Section 20(b) of the '34 Act provides, in part, that it shall be unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b–5, in turn, forbids "the use, in connection with the purchase or sale of any security," of (1) "any device, scheme, or artifice to defraud;" (2) "any untrue statement of a material fact;" (3) the omission of "a material fact necessary in order to make the statements made . . . not misleading;" or (4) any other "act, practice, or course of business" that "operates . . . as a fraud or deceit." 17 C.F.R. § 240.10b–5 (2000). To succeed in a § 10(b) and Rule 10b–5 action, therefore, a plaintiff must establish that "in connection with the purchase or sale of securities, defendant, acting with scienter, either made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury." *Castellano v. Young & Rubicam, Inc.,* 257 F.3d 171, 179 (2d Cir.2001) (internal quotations omitted).

■ As an initial matter, DoubleClick asserts that they are entitled to summary judgment on plaintiff's § 10(b)/Rule 10b–5 claim because it is time-barred. The Court agrees. Regarding a claim brought under § 10(b), the '34 Act provides that "[n]o action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 364n, 111 S.Ct. 2773, 115 L.Ed.2d 321.9 (1991). As the Second Circuit has stated, the test for whether a plaintiff has been put on adequate notice is an objective one:

> A plaintiff in a federal securities case will be deemed to have discovered fraud for the purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud. . . . Moreover, when the circumstances could suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry.

*Dodds v. Cigna Secs., Inc.,* 12 F.3d 346, 350 (2d Cir.1993). Thus, for limitations purposes, "[d]iscovery takes place when the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in exercise of reasonable diligence, would have led to actual knowledge." *Kahn v. Kohlberg, Kravis, Roberts & Co.,* 970 F.2d 1030, 1042 (2d Cir.1992), *citing, Ingenito v. Bermec Corp.,* 441 F.Supp. 525, 554 (D.C.N.Y.1977); *see also Rothman v. Gregor,* 220 F.3d 81, 96 (2d Cir.2000) (stating that statute includes constructive or inquiry notice as well as actual notice). Moreover, although in some cases the question of constructive or inquiry notice may be one for the trier of fact, the objective test "mandates a dismissal of or summary judgment on a plaintiff's securities fraud claim when the pleadings [or public disclosures] disclose facts sufficient to have placed the plaintiff on inquiry notice of the alleged fraud prior to the one-year cut-off." *In re Integrated Res. Real Estate Ltd. P'ships Secs. Litig.,* 815 F.Supp. 620, 638–39 (S.D.N.Y.1993) (internal quotations omitted); *see also*

*Dodds v. Cigna Secs. Inc.,* 12 F.3d 346, 351–52 (2d Cir.1993).

In this case, the basis for the alleged fraud is that the Offer Letter and preceding oral representations by Double-Click failed to disclose the restrictions on plaintiff's ability to exercise his stock options in the event of his termination; furthermore, plaintiff claims that DoubleClick intentionally misled him regarding his receiving an "indefeasible equity ownership interest" in the company. Compl. ¶¶ 12, 61. As discussed below, the Court concludes that the latest date on which plaintiff can be charged with being on inquiry notice of the alleged fraud is December 17, 1997, more than a year before plaintiff brought this action.

Even if DoubleClick did in fact make misrepresentations in the course of the parties' prior oral negotiations, plaintiff was first placed on notice of the alleged fraud on July 2, 1997, when he received the Offer Letter. That letter stated, in part, that: *"In accordance with the DoubleClick Stock Option Plan,* you will receive 12,000 options of stock which vest 3,000 options *per year,* based upon the date of option grant." Pl.'s Not. of Mot. for Summ. J., Ex. 1, Offer Letter (emphasis added). The Offer Letter made clear, therefore, that plaintiff was not receiving an indefeasible equity interest but rather a grant of stock options that were to vest incrementally over time and were subject to the terms of DoubleClick's Stock Option Plan. Instead of seeking clarification of or elaboration on the terms set forth in the Offer Letter, however, plaintiff chose to commence employment with DoubleClick on July 15, 1997. Moreover, although he claims to have subsequently requested a copy of the Plan, plaintiff never followed up on such requests, nor did he ever see fit to inquire with any of the DoubleClick officers with whom he had previously negotiated his employment.

Assuming *arguendo* that the Offer Letter was not sufficient to put plaintiff on notice of the complained of fraud, the various Option Documents plaintiff signed on December 7, 1997 surely were. For example, the Notice of Grant's Exercise Schedule made plain that the 12,000 shares are exercisable only incrementally over an employee's years of service, stating, in reference to the first such year, "[t]he Option shall become exercisable with respect to: (1) twenty five percent (25%) of the Option Shares *upon the Optionee's completion of one (1) year of Service* measured from the Vesting Commencement Date." Pl.'s Not. of Mot. for Summ. J., Exh. 3, Notice of Grant (emphasis added). Additionally, both the Stock Option Agreement and the 1997 Stock Option stated, in virtually identical language, that following termination an employee is entitled to exercise only those options that have vested as of the date of termination. Plaintiff does not dispute that he was given a copy of and fully read the above three (3) documents; the Court observes, moreover, that the language used in the documents was sufficiently clear so as to allow full comprehension by one of ordinary intelligence.

The Court concludes, therefore, that because a reasonable person of ordinary intelligence would have discovered after reading the Option Documents and Offer Letter that the information contained therein did not comport with plaintiff's asserted understanding of his stock options—*i.e.,* that the 12,000 shares were indefeasible and thus fully exercisable upon termination regardless of the length of prior employment—plaintiff is charged with being on inquiry notice of such inconsistencies, as a matter of law, as of December 17, 1997. Indeed, plaintiff "should have known or should have made inquiry regarding the indefeasability of his [o]ption ... based on the documents he signed and acknowledge[d] receiving." *Butvin v.*

*DoubleClick, Inc.,* No. 99 Civ. 4727, 2000 WL 827673, *8 (S.D.N.Y. June 26, 2000), *aff'd,* 22 Fed.Appx. 57, 2001 WL 1486519 (2nd Cir.2001). Because plaintiff's one-year statute of limitations period expired before he filed this action, his § 10(b)/Rule 10b–5 claim is time-barred.

Alternatively, even if plaintiff's § 10(b)/Rule 10b–5 claim was properly before the Court, it is nonetheless amenable to summary judgment on the grounds that it lacks merit. As explained below, the Court finds that plaintiff is unable to establish all the requisite elements of a § 10(b) claim—in particular, that Double-Click's conduct was "in connection with" the purchase or sale of securities; that DoubleClick acted with scienter; and that plaintiff's reliance on DoubleClick's actions was justified.

█ Initially, plaintiff fails to satisfy the requirement under § 10(b) that defendant engaged in fraudulent conduct "in connection with" the purchase or sale of securities. Although the Supreme Court has held that a secret reservation at the time it is issued not to permit the exercise of a stock option "relat[es] to the value of a security purchase or the consideration paid" and is thus covered by § 10(b), *see Wharf (Holdings) Ltd. v. United Int'l. Holdings, Inc.* 532 U.S. 588, 589, 121 S.Ct. 1776, 149 L.Ed.2d 845 (2001), plaintiff in this case has not produced sufficient evidence that DoubleClick did not intend to honor any of its promised stock options at the time the alleged misrepresentations were made. Plaintiff alleges that "there is no question" of DoubleClick's fraudulent intention, Pl. Mem. in Opp. to Def.'s M. for Summ. J. at 18; however, although such conclusory allegations might enable plaintiff to survive a motion to dismiss, they are not sufficient at the summary judgment stage. Plaintiff attempts to bolster his claim by stressing the fact that plaintiff's options were to be issued under the 1997, not 1996, Stock Option Plan. The Court finds that this is a distinction without a difference. Indeed, plaintiff has not identified any material differences between the two (2) plans, nor, moreover, has it been alleged that DoubleClick ever refused to honor options that were properly exercisable under the 1997 Plan.

Plaintiff's statement that DoubleClick "concealed the 1996 Stock Option Plan" is similarly wanting. In addition to being unsubstantiated, as noted above, plaintiff admits to making only two (2) casual inquiries regarding the Plan, which he did not follow up, and never contacted any of the officers with whom he had negotiated his employment. In light of plaintiff's lackadaisical approach, no rational jury could find that DoubleClick affirmatively "concealed" the Plan. This is especially true because there was no plausible reason why DoubleClick would take affirmative steps to conceal when none were necessary in the face of plaintiff's lack of diligence in pursuing the matter. The Court concludes, therefore, that there is insufficient evidence to support the inference that DoubleClick either never intended to honor the stock options it granted to plaintiff or affirmatively concealed the conditions of those options. Thus he has failed to elicit sufficient facts to support a rational jury finding that defendants engaged in fraud in connection with the sale of a security.

That conclusion is also supported by the fact that there are no genuine issues of fact on the issue of whether DoubleClick acted with scienter. "The element of scienter, as used in connection with the securities fraud statutes, requires a plaintiff to show that the defendant acted with intent to deceive, manipulate or defraud, or at least knowing misconduct." *Grandon v. Merrill Lynch & Co. Inc.,* 147 F.3d 184, 195 (2d Cir.1998). Although "[i]ssues of motive and intent are usually inappro-

priate for disposition on summary judgment ... [,][i]n a § 10(b) action, a court may [ ] grant such relief to the defendants ... [if] the plaintiff has failed to present facts that can support an inference of bad faith or an inference that defendants acted with an intent to deceive." *Wechsler v. Steinberg,* 733 F.2d 1054, 1058–59 (2d Cir. 1984).

In an attempt to show scienter, plaintiff again makes much of the fact that plaintiff's stock options ultimately were to be granted under the 1997 Plan. As noted above, however, plaintiff has failed to come forward with any facts evincing a willingness by DoubleClick to do anything more than enforce the terms of the 1997 Plan—terms which are virtually identical to those in the 1996 Plan. The Court concludes, therefore, that there is no evidence to support plaintiff's contention that he was "an unwitting pawn in DoubleClick's hands," Pl.'s Mem. in Opp. to Def.'s M. for Summ. J. at 19, or any other inference of bad faith or intent to deceive on the part of defendant.

Finally, even if plaintiff were able to satisfy the above two (2) requirements, he has failed to show that his reliance on DoubleClick's allegedly fraudulent oral and written communications was justified. As the Second Circuit has stated, "reasonable reliance must be proved as an element of a securities fraud claim." *Harsco Corp. v. Segui,* 91 F.3d 337, 342 (2d Cir.1996); *see also Harrison v. Dean Witter Reynolds, Inc.,* 79 F.3d 609, 618 (7th Cir.1996) ("The fact of reliance ... is not enough by itself; that reliance must be justifiable, or reasonable."). Here, the Court finds that the same set of facts which placed plaintiff on inquiry notice of the alleged fraud as a matter of law in December 1997 also render plaintiff's continued reliance on DoubleClick's oral communications unreasonable.

Therefore, viewing the evidence in a light most favorable to plaintiff and resolving all inferences in plaintiff's favor, the Court concludes that the dearth of evidence in support of plaintiff's § 10(b)/Rule 10b–5 claim would prevent a rational jury from finding in plaintiff's favor. Accordingly, because there are no genuine issues of material fact, DoubleClick is entitled to summary judgment on plaintiff's § 10(b) claim as a matter of law.

## B. State Law Claims

Plaintiff's Second Amended Complaint also sets forth state law claims for common law fraud, breach of contract, promissory estoppel and unjust enrichment. The Court dismisses all such state law claims without prejudice.

As noted above, the Court's subject matter jurisdiction in this case is based on 28 U.S.C. § 1331, which provides that a court has "[f]ederal question jurisdiction ... where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 25 (2d. Cir.2000) (internal quotations omitted). Although a court with federal question jurisdiction has the discretion to hear related state claims under the doctrine of pendent jurisdiction, in this case, in the absence of a valid federal claim, the Court declines to exercise such jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, plaintiff's state law claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby granted with respect to plaintiff's federal securities claim; plaintiff's remaining state

claims are dismissed without prejudice. Plaintiff's motion for summary judgment limited to his breach of contract claim is hereby denied.

It is **SO ORDERED**.