

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-21-2007

# Nationalist Movement v. York

Precedential or Non-Precedential: Precedential

Docket No. 06-2184

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Nationalist Movement v. York" (2007). *2007 Decisions.* Paper 1379.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1379

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2184

THE NATIONALIST MOVEMENT,
                              Appellant

v.

CITY OF YORK

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
D.C. Civil No. 02-cv-01917
District Judge:  The Honorable Yvette Kane, Chief Judge

Argued:  January 30, 2007

Before: BARRYand ROTH, <u>Circuit Judges</u>, and DEBEVOISE,[*]
<u>District Judge</u>

(Opinion Filed:  March 21, 2007)

_____

[*] The Honorable Dickinson R. Debevoise, Senior District
Judge, United States District Court for the District of New Jersey,
sitting by designation.

Richard Barrett, Esq. (Argued)
P.O. Box 2050
Learned, MS   39154

Counsel for Appellant

James D. Young, Esq. (Argued)
Lavery, Faherty, Young & Patterson
225 Market Street
Suite 304, P.O. Box 1245
Harrisburg, PA   17108
        -AND-
Donald B. Hoyt, Esq.
Blakely, Yost, Bupp & Rausch
17 East Market Street
York, PA 17401

Counsel for Appellee

---

## OPINION OF THE COURT

---

BARRY, Circuit Judge

Appellant, The Nationalist Movement, challenges the constitutionality of section 741.03 of the Codified Ordinances of the City of York ("section 741.03" or "the Ordinance"), which requires, in certain circumstances, that prospective users of public land within the City file an application, pay certain fees, and agree to a variety of conditions before permission for the use of that land is granted.  The District Court ruled that two provisions of the Ordinance were unconstitutional, a ruling the City has not appealed, but the Court upheld the remainder of the Ordinance and granted summary judgment for the City.  We will affirm in part and reverse in part.

2

As relevant here, section 741.03, the Public Meetings provision, prohibits persons from "[c]onduct[ing] a public assembly, parade, picnic, or other event involving more than twenty-five individuals" on public land without first obtaining a permit. § 741.03(c)(1)(A). In order to obtain a permit, an applicant must file a written application and tender an application fee, § 741.03(d), which is $50 for city residents and $100 for non-residents. In addition, an applicant must sign an agreement "in which the applicant shall promise and covenant to bear all costs of policing, cleaning up and restoring the park; . . . to reimburse the City for any such costs incurred by the City; and to indemnify the City and hold the City harmless from any liability to any person resulting from any damage or injury occurring in connection with the permitted event proximately caused by the action of the permittee" or its agents, § 741.03(d)(6), and pay "a user fee," § 741.03(d)(8). The Ordinance provides that the requirements "for a user fee, security deposits, or certificate of insurance shall be waived . . . if the activity is protected by the First Amendment of the United States Constitution and the requirement would be so financially burdensome that it would preclude the applicant from using Park property for the proposed activity." § 741.03(f)(3).[1] Completed applications will "be processed in order of receipt," § 741.03(e)(1), and grounds for denial, § 741.03(e)(5), deadlines, and procedures for review and appeal, § 741.03(f), are set forth.

On June 14, 2002, The Nationalist Movement submitted an application to hold Henry Schaad Day[2] and a King Holiday Protest at York City Hall on January 20, 2003. On that application, it objected to the various fees as a "violation of the First Amendment," but did not indicate that it was financially

---

[1] The District Court found the security deposit and certificate of insurance provisions to be unconstitutional, a finding, as noted above, the City has not appealed.

[2] Schaad was a Caucasian rookie police officer who was shot and killed during race rioting in York in July 1969.

unable to pay the fees and did not request a waiver form. The City denied the application as incomplete and a series of letters then passed between the parties. Following the final rejection of the application, The Nationalist Movement first requested a waiver form and, on October 25, 2002, filed this action in the District Court.

The City moved to dismiss and The Nationalist Movement moved for a temporary restraining order and a preliminary and permanent injunction. Prior to the hearing on the injunction, the parties agreed that The Nationalist Movement could hold its event on January 20, 2003 without obtaining a permit or paying more than a $1 nominal fee. The City did not concede any defects in the Ordinance, but, rather, represented to the Court that the Ordinance did not apply because the event would have less than twenty-five participants. The event took place without incident. The Nationalist Movement subsequently filed applications to hold events in 2004 and 2005, applications which have been held in abeyance pending resolution of this case.

On May 5, 2003, the City moved to dismiss based on the "settlement agreement" which had been reached with The Nationalist Movement. That motion was denied. The parties then moved for summary judgment. By Memorandum and Order dated March 24, 2006, the District Court ruled that the requirements that a security deposit be paid and a certificate of insurance obtained before a permit could issue violated the First Amendment of the Constitution because they essentially allowed the City to charge higher fees based on the content of the applicant's message. The Court upheld all of the other challenged provisions as constitutional and granted summary judgment for the City. In addition, the Court rejected The Nationalist Movement's as-applied challenge and equal protection arguments. Resolution of The Nationalist Movement's request for attorneys' fees was stayed pending this appeal.

We have jurisdiction over The Nationalist Movement's appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review of a district court's order granting summary judgment.

4

Reese Bros., Inc. v. United States, 447 F.3d 229, 232 (3d Cir. 2006).

## II.

We decide, first, whether The Nationalist Movement can bring a facial challenge to the Ordinance. Although the 2003 Henry Schaad Day went forward as planned, the Supreme Court has long held that statutes which threaten to chill First Amendment speech may be facially challenged without the necessity of the speaker being denied, or even having applied for, a permit. City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755–59 (1988); Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150–51 (1969). As the Court explained in Plain Dealer Publishing Co., "a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." Plain Dealer Publ'g Co., 486 U.S. at 759. Because we agree that the Ordinance chills speech on the basis of its content, The Nationalist Movement has standing to maintain its facial challenge.[3]

We turn, then, to the constitutionality of the Ordinance. In Forsyth County v. Nationalist Movement, 505 U.S. 123, 130 (1992), the Supreme Court held that an "ordinance requiring a permit and a fee before authorizing public speaking, parades, or assemblies" in traditional public fora "is a prior restraint on

---

[3] Although we find that The Nationalist Movement can maintain its facial challenge, we find its as-applied challenge to be completely without merit. As noted above, the City allowed Henry Schaad Day to take place as scheduled and charged The Nationalist Movement a $1 nominal fee. As such, The Nationalist Movement has no legitimate basis to challenge the application of the Ordinance to it. Furthermore, the contention that the City improperly failed to waive the application fee is belied by the record. The Nationalist Movement did not comply with the procedures in the Ordinance and it did not even request a waiver form until after the final rejection of its application.

speech" and therefore subject to a heavy presumption against its validity. Because the government does, however, have an interest in regulating competing uses of public space, such a prior restraint will be found constitutional where it does "not delegate overly broad licensing discretion to a government official" and is a valid time, place, and manner restriction, i.e., it leaves open ample alternatives for communication and is content-neutral and narrowly tailored to serve a significant governmental interest. Id.

In Forsyth County, the Court was faced with a statute which allowed the levying of a permit fee of up to $1000 per day which was designed to defray administrative costs and the cost of necessary law enforcement at the planned event. The Court found such a variable fee to be violative of the First Amendment for a number of reasons. First, there were no standards directing the setting of the fee, such that it was "left to the whim of the administrator." Id. at 133. "The First Amendment prohibits the vesting of such unbridled discretion in a government official" because such power could be easily used in a political fashion. Id. Second, and alternatively, the fee was, in part, based on the content of the speech.

Significantly, however, the Court did not rule that application or permit fees are unconstitutional. In fact, the Court cited its earlier decision in Cox v. New Hampshire, 312 U.S. 569 (1941), in which it stated that "[t]here is nothing contrary to the Constitution in the charge of a fee limited" to "meet the expense incident to the administration of the Act and to the maintenance of public order in the matter licensed." Cox, 312 U.S. at 577.

There is no discretionary component involved in setting the application fee here. The fee is $50 for residents and $100 for non-residents and, absent waiver, is applied across the board to all prospective users of "Park property." This fee is nominal, is not content based, and is narrowly tailored to allow the city to recoup the cost of processing the application. Under Forsyth County, there is nothing about the application fee that is

6

violative of the First Amendment.[4]

Furthermore, at oral argument the City conceded that it reads the provision in the Ordinance waiving a user fee, security deposit, or certificate of insurance to apply as well to the application fee, despite the seemingly contrary language in the waiver provision itself.[5] See Forsyth County, 505 U.S. at 131 (stating that courts must consider the government's "authoritative constructions of the ordinance, including its own implementation and interpretation of it"). As such, as construed by the City, the application fee does not unconstitutionally burden the free speech rights of those speakers too indigent to afford its payment. See Cent. Fla. Nuclear Freeze Campaign v. Walsh, 774 F.2d 1515, 1523–24 (11th Cir. 1985) (discussing Lubin v. Panish, 415 U.S. 709 (1974)).

_____

[4] The Nationalist Movement also challenges the $50/$100 application fee differential as violative of the Equal Protection Clause. The District Court rejected this challenge, finding that the lower fee for residents furthered the legitimate government purpose of encouraging residents to hold events locally. The Supreme Court has upheld residency requirements such as this under a rational basis test where, as here, there was no contention that fundamental rights were at issue. See, e.g., Martinez v. Bynum, 461 U.S. 321, 328–29 (1983) (school residency requirement); Baldwin v. Fish & Game Comm'n of Mont., 436 U.S. 371, 388–92 (1978) (hunting permit for sport). The Nationalist Movement has not shown that the rational basis test does not apply to this content-neutral minimal application fee, much less that, under that test, the differential does not pass muster.

[5] The City further acknowledged that the Ordinance should be amended to more clearly reflect this interpretation of its scope. It also acknowledged its understanding that the waiver provision applies to the reimbursement and hold-harmless provisions. We are skeptical as to how the waiver provision, in its current form, could be read in such a fashion, and expect that during the amendment process the City will rework that provision such that its scope is clear.

7

In addition to the payment of an application fee, applicants must sign an agreement "in which the applicant shall promise and covenant to bear all costs of policing, cleaning up and restoring the park" and "reimburse the City for any such costs incurred by the City." § 741.03(d)(6). We find that this reimbursement provision is unconstitutional, and that the District Court erred in finding to the contrary.[6]

It is beyond peradventure that a city can establish a permit scheme whose goal is to "assure financial accountability for damage caused by" an event, Thomas v. Chi. Park Dist., 534 U.S. 316, 322 (2002), and can take into account the resulting expense of an event in assessing a fee. Thus, for example, a circus or other large parade can be assessed a larger fee than a small parade, because the former would cause a larger expense to the government than the latter. Cox, 312 U.S. at 577; see also Murdock v. Pennsylvania, 319 U.S. 105, 116 (1943); Church of the Am. Knights of the Ku Klux Klan v. City of Gary, 334 F.3d 676, 682 (7th Cir. 2003).

Such expenses, however, cannot be based on the content of the proposed speech. In Forsyth County, the Court found a permit fee that was based, in part, on the need to defray the cost of providing police protection to the speaker to be an unconstitutional content-based fee.[7] The Court ruled that such a

_____

[6] We reject the City's argument that this provision is constitutional because it is identical to a provision in the Chicago Park District ordinance, an ordinance unanimously upheld by the Supreme Court. Thomas v. Chi. Park Dist., 534 U.S. 316 (2002). In Thomas, however, the ordinance was challenged only on the ground that the rigid procedural requirements of Freedman v. Maryland, 380 U.S. 51 (1965), should apply. The Court rejected that challenge and noted that the petitioner did not argue that the ordinance was not content-neutral or otherwise invalid as a time, place, and manner restriction. Thomas, 534 U.S. at 323 n.3.

[7] At first blush, a provision that charges for the policing of an event seems like a content-neutral restriction because it serves a purpose unrelated to content, even though it places a greater

8

fee is necessarily based on the content of the speech because the anticipated cost would need to be determined by estimating the public's reaction to the speech. Forsyth County, 505 U.S. at 134. For instance, "[t]hose wishing to express views unpopular with bottle throwers . . . may have to pay more for their permit." Id. The Court held that raising revenue for police services could not justify such a content-based fee.[8] Id. at 136; see also Church of the Am. Knights, 334 F.3d at 680–82; Cent. Fla. Nuclear Freeze Campaign, 774 F.2d at 1524–25; Invisible Empire Knights of the Ku Klux Klan v. City of West Haven, 600 F. Supp. 1427, 1433–34 (D.Conn. 1985).

Applying this principle, the District Court found that the security deposit and insurance requirements imposed an unconstitutional content-based restriction because the City based the required amounts of the security deposit and insurance coverage on the "group's reputation" and the "unpopularity of the group's message." Memorandum at 16 & n.6. This, the Court held, "threatens to dissuade unpopular groups from utilizing traditional public forums by placing a premium on—what the city views as—unpopular speech" and is therefore unconstitutional. Id.

---

burden on some speakers. See Ward v. Rock Against Racism, 491 U.S. 781, 792 (1989). The Court in Forsyth County, however, dispelled any such idea, finding that "it cannot be said that the fee's justification has nothing to do with content" given that an accurate estimation of the necessary security would "necessarily" involve an examination of the content of the speech, an estimate of the response of others, and a determination of the "number of police necessary to meet that response." Forsyth County, 505 U.S. at 134.

[8] At that point in its analysis, the Court did not note the standard that it was applying. Content-based regulations are subjected to a higher standard of review than content-neutral ones. The government must show that the regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. See Ark. Writers' Project, Inc. v. Ragland, 481 U.S. 221, 231 (1987).

9

The reimbursement provision is similarly unconstitutional. As the City conceded at oral argument, the reimbursement provision is the flip side of the same coin as the unconstitutional security deposit and insurance requirements. Unlike those requirements, which require a speaker to incur costs calculated at least partially on estimates linked to the content of the proposed speech before its event takes place, the reimbursement provision requires a speaker to pay, after its event has taken place, the actual costs incurred by the City. We find that this distinction is not constitutionally significant, at least not in this case.

The broad language of the reimbursement provision clearly allows the City to charge a speaker not only for costs rightfully associated with its event, but with numerous other, content-based, costs.[9] For example, the City would incur

---

[9] This broad language can be contrasted with the Ordinance's hold-harmless clause, which requires the speaker to agree "to indemnify the City and hold the City harmless from any liability to any person resulting from any damage or injury occurring in connection with the permitted event proximately caused by the action of the" speaker. § 741.03(d)(6). On its face, this clause applies only to damages for which the speaker can legally be held liable, and, as the District Court pointed out, Pennsylvania law provides that such provisions must be strictly construed and "limited in scope to matters expressly covered therein." Fulmer v. Duquesne Light Co., 543 A.2d 1100, 1104 (Pa. Super. Ct. 1988). As such, the hold-harmless clause here is significantly narrower in scope than one recently upheld by the Ninth Circuit. In Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022 (9th Cir. 2006), the Court, over a strong dissent, upheld a hold-harmless clause which was so broad as to require a speaker to indemnify the city for the defense of frivolous suits and for damages caused "by the conduct of an opponent of the demonstration through no fault of the [speaker]." Id. at 1056. While we need not comment on much less pass upon the constitutionality of the provision at issue in that case, we note that the hold-harmless clause at issue here would cover neither of these situations.

expenses planning for the public's reaction to the speech, making available the necessary resources to contain potential counter-demonstrators, providing an appropriate level of police presence to control and pacify counter-demonstrators, and generally protecting the speaker. All of these actions would necessarily require a consideration of the content of the proposed speech and the anticipated reaction of the public. If we countenanced a charge for such expenses, we would be allowing the ruling in <u>Forsyth County</u> to be undermined by the simple expedient of charging content-based fees after an event has taken place rather than before and we would be ignoring precedent of long standing holding that speech cannot be burdened because of the reaction of others. <u>See, e.g.</u>, <u>Terminiello v. Chicago</u>, 337 U.S. 1, 5 (1949); <u>Schneider v. State (Town of Irvington)</u>, 308 U.S. 147, 162 (1939).

Indeed, in many ways, the reimbursement provision is even more offensive to the First Amendment than the security deposit and insurance requirements struck down by the District Court. An applicant who signed the agreement required by the reimbursement provision would have no way of knowing the scope of the liability to which it might be subjecting itself. Although an applicant can plan for the level of participation by members of its organization, it simply cannot accurately anticipate the actions of others or the anticipated reaction of the police. <u>See, e.g.</u>, <u>Terminiello</u>, 337 U.S. at 5; <u>Schneider</u>, 308 U.S. at 162–63; <u>Van Arnam v. Gen. Servs. Admin.</u>, 332 F. Supp. 2d

---

We recognize that even a narrowly-confined hold-harmless clause can have an inhibiting effect on speech, particularly speech concerning a controversial subject. <u>See</u>, <u>e.g.</u>, <u>Van Arnam v. Gen. Servs. Admin.</u>, 332 F. Supp. 2d 376 (D. Mass. 2004). Given the City's acknowledged understanding that the waiver provision, "fairly read," encompasses the hold-harmless clause as well as the application fee and the reimbursement provision, we would expect it to acknowledge, as it has done with regard to the application fee, that the provision should be amended to reflect this reading. <u>See supra</u> note 5. Given the City's interpretation, and the narrow scope of the hold-harmless clause, we agree with the District Court that the clause does not offend the First Amendment.

376, 402–03 (D. Mass. 2004).  To require an applicant to agree to pay this unquantified fee—which is based substantially on the anticipated and actual reaction of others—before it can speak is an unconstitutional chilling of speech even if, as the Seventh Circuit remarked, "the fee is calculated with scrupulous precision by a battalion of cost accountants." Church of the Am. Knights, 334 F.3d at 681.

Furthermore, the reimbursement provision is ripe for abuse.  In deciding how best to police the event and charge the speaker, the City is given unlimited discretion which could easily be used to punish (or intimidate) speakers based on the content of their messages.  Given the substantial expense that could be levied upon a speaker, and the almost limitless possibility of abuse, it is an understatement to conclude that this provision chills constitutionally-protected speech.[10]

## III.

For the foregoing reasons, we will affirm in part and reverse in part the order of the District Court and remand for further proceedings.

---

[10] We have considered The Nationalist Movement's remaining arguments (that is, those which were at least marginally covered by the disappointing briefs of both parties, see, e.g., United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)), and find them to be without merit. As such, the District Court's rulings on these matters will be affirmed.

12